# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

COREY LAMONT MCCLURE,

        Defendant-Appellant.

UNPUBLISHED
January 22, 2015

No. 317995
Wayne Circuit Court
LC No. 13-002498-FC

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of kidnapping, MCL 750.349(1)(c), two counts of first-degree criminal sexual conduct ("CSC"), MCL 750.520b(1)(e) (sexual penetration by actor armed with a weapon), three counts of armed robbery, MCL 750.529, and three counts of felonious assault, MCL 750.82(1). Defendant was sentenced to 171 months to 25 years' imprisonment for the kidnapping conviction, 135 months to 20 years' imprisonment for each of the first-degree CSC convictions, 135 months to 20 years' imprisonment for the first armed robbery conviction, 81 months to 15 years' imprisonment for each of the remaining armed robbery convictions, and 19 to 48 months' imprisonment for each of the felonious assault convictions. We reverse defendant's three felonious assault convictions, affirm his remaining convictions, and remand for resentencing if necessary.

## I. FELONIOUS ASSAULT CONVICTIONS

Defendant argues that there was insufficient evidence for a reasonable jury to find that he possessed a dangerous weapon because the gun used in the crime was not real. Because the felonious assault statute requires that the weapon used be a "dangerous weapon," and not simply one with the appearance of a dangerous weapon, we agree.

This Court reviews the record de novo when addressing a claim of insufficient evidence. *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010); *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). The Court construes the evidence in the light most favorable to the prosecutor in determining if a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005).

-1-

Felonious assault is "a simple assault aggravated by the use of a weapon." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993) (citation omitted). "[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007). MCL 750.82 describes a dangerous weapon for the purposes of the crime of felonious assault as "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon . . . ." The prosecutor need not present proof of the operability of a gun used in an assault in order to support a felonious assault conviction, *People v Smith*, 231 Mich App 50, 53; 585 NW2d 755 (1998), but an unloaded yet operable gun is generally considered a dangerous weapon under MCL 750.82, *id*.

Since at least 1938 Michigan courts have recognized that objects that are not "per se" dangerous can be dangerous weapons " '[w]hen the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon.' " *People v Kay*, 121 Mich App 438, 443-444; 328 NW2d 424 (1982), quoting citing *People v Goolsby*, 284 Mich 375, 378; 279 NW 867 (1938). Any object, including a dog or a car, can be a dangerous weapon for the purposes of committing a felonious assault, so long as the object may be considered dangerous in its use. *Goolsby*, 284 Mich at 378-380 (car as a dangerous weapon); *Kay*, 121 Mich App at 443 (dog may be a dangerous weapon). However, a victim's apprehension of an object alone cannot "transform it into a 'dangerous weapon.' " *People v Stevens*, 409 Mich 564, 567; 297 NW2d 120 (1980).[1]

Defendant argues that the instant case aligns with *Stevens*. In *Stevens*, the defendant pointed a starter pistol at individuals in a car following an "exchange of insults." *Id*. at 565. The parties stipulated for the purposes of the defendant's motion to quash the information that "the weapon involved was a starter pistol with the barrel bored out, containing eight live .22 caliber shells, but with the firing pin filed down to the point that it would not be possible to fire the pistol." *Id*. at 566. Because there was no evidence that the defendant attempted or appeared to use a starter pistol as a striking weapon, the Michigan Supreme Court determined that the defendant could not be convicted of felonious assault because the starter pistol was incapable of propelling a dangerous projectile, and therefore, it was not a dangerous weapon. *Id*.

We agree that this case is analogous to *Stevens*. Like in *Stevens*, the trial court, prosecution, and defendant all agreed that the gun was not capable of firing because it was a toy. Indeed, the parties agreed to dismissal of a felony-firearm charge because the elements of that

---

[1]*Stevens* reasoned that if the Legislature intended for a victim's apprehension to be the definitive answer on whether a weapon is dangerous for purposes of the felonious assault statute, it would have used the language that it used in the armed robbery statute, "which permits conviction on the ground that the perpetrator committed the robbery with an 'article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon.' " *Stevens*, 409 Mich at 567 n 1, quoting MCL 750.529.

offense could not be met because the gun was not real.[2]  Furthermore, there was no evidence that defendant used the gun as a striking weapon, which *Stevens* indicates would transform a firearm incapable of propelling a dangerous projectile into a dangerous weapon.  *Stevens*, 409 Mich at 567 n 2.  Therefore, the prosecution presented insufficient evidence for a reasonable jury to find defendant guilty of felonious assault because it did not establish that he used a dangerous weapon, which is a required element of the crime.  See *Chambers*, 277 Mich App at 8.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel during plea negotiations and prior to trial. Defendant asserts that his trial counsel's  performance fell below an objective standard of reasonableness during plea negotiations because his trial counsel (1) recommended that defendant accept a plea for a crime that he could not have committed under the law and facts of the case, and (2) failed to move to dismiss the felonious assault and felony-firearm charges prior to trial.  According to defendant, had his trial counsel successfully moved to dismiss these charges prior to trial the plea bargain he would have been offered would have been more favorable to him, and he would likely have accepted it.

In order to preserve the issue of ineffective assistance of counsel, a defendant must file a timely motion in the trial court for a new trial raising the issue. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).  When a defendant has failed to move the trial court for a new trial or an evidentiary hearing within the time allotted by MCR 6.431(A) and MCR 7.208(B)(1), he may move in this Court to remand the case back to the trial court, so that he may properly preserve the issue for appellate review.  See *Ginther,* 390 Mich at 444-445; see also MCR 7.211(C)(1).  If the trial court does not hold an evidentiary hearing on a defendant's allegations, this Court is limited in its review of the issue to mistakes apparent on the record.  *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).  This Court denied defendant's motion to remand, finding that defendant conceded that "his arguments regarding his counsel's ineffective performance can be reviewed based on the existing record."  *People v McClure*, unpublished order of the Court of Appeals, entered March 14, 2014 (Docket No. 317995).  Accordingly, the issue is not preserved, and this Court's review is limited to the existing record.  *Wilson*, 242 Mich App at 352; *Hurst*, 205 Mich App at 641.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan constitutions is a mixed question of fact and law." *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014).  Findings of fact are reviewed for clear error.  *Id*.  Questions of constitutional law are reviewed de novo.  *Id*.

Both the United States and Michigan Constitutions grant criminal defendants the right to the effective assistance of counsel at trial.  US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  A defendant claiming ineffective

---

[2] A toy gun that does not discharge a projectile is not a firearm for purposes of the felony-firearm statute.  *People v Schofield*, 124 Mich App 134, 135-136; 333 NW2d 607 (1983), rev'd on other grounds 417 Mich 988 (1983).

assistance of counsel must establish (1) that "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* at 51-52 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). This Court does not apply the benefit of hindsight when determining whether trial counsel performed competently. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Criminal defendants are also entitled to effective assistance of competent counsel during plea negotiations. *Lafler v Cooper*, 566 US ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012) (citations omitted). When considering whether trial counsel is ineffective in the context of the plea process, the defendant "must show that the outcome of the plea process would have been different with competent advice." *Id*. at 1384 (citation omitted). When a defendant chooses to stand trial and claims ineffective assistance of counsel during plea bargaining, in order to satisfy the second part of the ineffective assistance test, known as the prejudice prong, the

> defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*. at 1385.]

Defendant is correct that two of the three plea offers made to him included a felony-firearm charge, of which he could not have been convicted as a matter of law. However, defendant conveniently ignores that he was also offered an alternate plea that did not include a felony-firearm charge, and he rejected it. Indeed, on the first day of trial the prosecution placed on the record two plea offers that defendant had rejected:

> It was offered, due to the advocacy of [defendant's trial counsel], that the defendant could plead to a reduced charge of criminal sexual conduct in the third degree and one count of felony[-]firearm. All other counts, the kidnapping, the criminal sexual conduct in the first degree and the three armed robberies would have been dismissed.
>
> In addition to that, the three counts of felonious assault would have also been dismissed with a sentence agreement of five to sixteen, plus two.
>
> In the alternative, the defendant could have also pled to six to fifteen without pleading guilty to the felony[-]firearm. That would have been dismissed. It is my understanding that [defendant's trial counsel] has explained this offer to his client. His client refuses to accept this offer. We are proceeding to trial.

Defendant cannot establish that his trial counsel's performance fell below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51-52. First, the prosecution indicated that the very generous plea offers it made were in part attributed to the advocacy of defendant's

trial counsel, and defendant rejected the very terms that he now asserts his attorney should have worked towards. Second, defendant argues that his trial counsel was ineffective for failing to move to dismiss charges during plea negotiations that the trial court refused to dismiss when ruling on defendant's motion for directed verdict. Trial counsel cannot be deemed ineffective for failure to make fruitless motions. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Even assuming that trial counsel's failure to move to dismiss the felonious assault and felony-firearm charges prior to trial amounted to deficient performance during plea negotiations, defendant cannot establish prejudice. The prosecutor went to great pains to make sure that defendant understood that the plea offers were in his best interest, emphasizing that they were significantly below the guidelines. Despite this, *defendant* rejected the plea offers. The outcome would not have been different had trial counsel performed effectively because defendant chose to reject plea offers that did not include a felonious assault or felony-firearm charge and were substantially below the guidelines. Defendant has only himself to blame for not accepting a plea offer that did not include the charged firearms counts.

## III. FOURTH AMENDMENT CHALLENGE

Defendant also argues, albeit unsuccessfully, that police violated his Fourth Amendment rights by searching his home without a warrant. As a consequence, defendant argues that the fake gun that police recovered in his home should have been suppressed.

As an initial matter, to the extent defendant seeks suppression of the gun itself, the gun was never admitted into evidence, although it appears from the transcript that the prosecution intended to admit it as its Exhibit 9. Even without the gun itself being admitted into evidence, it was discussed at length at trial. This testimonial evidence was properly in evidence.

"A motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004) (citation omitted). Defendant did not make a proper motion in the trial court to suppress the gun or testimony related to the gun. However, in response to an objection, he did argue to the trial court that the search violated the Fourth Amendment. The trial court did not consider the argument, finding it to be an inappropriate discussion to have in front of the jury. Therefore, the issue is not preserved, and we review for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). There was no plain error (or, for that matter, any error) because defendant's Fourth Amendment right was not violated.

The standard of review applicable to a ruling on suppression varies depending on which aspect of the ruling is at issue. This Court reviews a trial court's decision on a motion to suppress for clear error. *People v Sobczak-Obetts*, 463 Mich 687, 694; 625 NW2d 764 (2001). Questions of law relevant to the suppression issue are reviewed de novo. *Id*. If the trial court made findings of fact on the matter, these factual findings are reviewed for clear error. *People v Oliver*, 464 Mich 184, 191; 627 NW2d 297 (2001). In the context of a seizure, the question of whether suspicion was reasonable under the Fourth Amendment is a question of law that this Court reviews de novo. *People v Bloxson*, 205 Mich App 236, 245; 517 NW2d 563 (1994) (opinion by HOLBROOK, P.J.).

Both the United States and Michigan Constitutions protect an individual's right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v New York*, 445 US 573, 586; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (citation and internal quotation marks omitted). However, "a probationer has a diminished expectation of privacy and, accordingly, may be subjected to searches that might be unreasonable if conducted on members of the general public." *People v Glenn-Powers*, 296 Mich App 494, 502; 823 NW2d 127 (2012), citing *United States v Knights*, 534 US 112; 122 S Ct 587; 151 L Ed 2d 497 (2001).

In *Griffin v Wisconsin*, 483 US 868, 875; 107 S Ct 3164; 97 L Ed 2d 709 (1987), the United States Supreme Court considered whether a Wisconsin statute that authorized warrantless searches of a probationer's home for "reasonable grounds" ran afoul of the Fourth Amendment rights of probationers. Particularly, in *Griffin*, the probationer's home was searched following a tip from a police detective that he had or may have had an illegal weapon in his home. *Id*. The Court ruled that because probation is a form of criminal sanction, with its goals to simultaneously rehabilitate the probationer and protect the community from harm, the "special needs" of the probation system justifies warrantless searches of probationers' homes pursuant to the Wisconsin regulation. *Id*. at 873-875. Further, it ruled that it is reasonable, pursuant to the Fourth Amendment, to allow a tip from a police officer to justify the search of a probationer's home under the regulation. *Id*. at 879-880. "In some cases—especially in those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Id*. at 879.

More recently, the Court reaffirmed and expanded its holding in *Griffin*, holding that the government may execute a warrantless search of a probationer's home upon a showing of reasonable suspicion. *Knights*, 534 US at 118. It rejected the probationer's argument that a warrantless search of a probationer could only satisfy the Fourth Amendment if it was a search "conducted by a probation officer monitoring whether the probationer is complying with probation restrictions." *Id*. at 117. It instead held, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id*. at 121. The Court reasoned that the balance of the considerations of "the degree to which [the search] intrudes upon an individual's privacy" and "the degree to which [the search] is needed for the promotion of legitimate governmental interests" requires that "no more than reasonable suspicion" is needed for a search of a probationer's home to comport with the Fourth Amendment. *Id*. at 119, 121. This Court has applied the Court's reasoning from *Griffin* and *Knights* to warrantless searches and seizures of probationers under Michigan regulations that align with Wisconsin's probation regulations. See *Glenn-Powers*, 296 Mich App at 502-503.

Defendant argues that the *Knights* Court left open the question of the "intent of the officers and the purpose of the search based only on reasonable suspicion." But he cites no law to support this assertion, *Payne*, 285 Mich App at 195, as none exists. Subjective intent is *never* an appropriate inquiry in Fourth Amendment analysis, see, e.g., *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) ("Reasonableness . . . is measured in objective terms

by examining the totality of the circumstances") and *People v Jenkins*, 472 Mich 26, 32 n 6; 691 NW2d 759 (2005) ("[O]nly *objective* conduct and circumstances are relevant for Fourth Amendment purposes") (emphasis in original), as the relevant inquiry is whether the officers had a reasonable suspicion, based on the totality of the circumstances, that the probationer was involved in criminal activity, *Knights*, 534 US at 121.

Turning to the application of the law to our facts, defendant insists that Robinson could not search his home without an independent ground for doing so, and that he could not rely upon what the police knew. Defendant relies chiefly on the Ninth Circuit decision in *Smith v Rhay*, 419 F2d 160 (CA 9, 1969). This Court is not bound by Ninth Circuit decisions. *People v Patton*, 285 Mich App 229, 234; 775 NW2d 610 (2009). *Smith* is not persuasive either, for as we concluded earlier, Michigan law authorizes searches of a probationer's home, without a warrant, based on a reasonable suspicion that a crime was committed. *Glenn-Powers*, 296 Mich App at 502-503, citing *Knights*, 534 US at 121.

In the instant case, defendant appears to concede that under the terms of his probation, he is subject to searches by Department of Corrections' officers on reasonable cause for violating the terms of his probation. Yet, he argues that Robinson did not have reasonable suspicion for the search because Robinson admitted that he had no reason to search defendant's home, other than that police officers told Robinson that defendant was a suspect in a crime. Admittedly, Robinson's testimony is unclear as to how much he knew about the crime for which defendant was under suspicion, as he did not testify to specifics, but instead indicated that defendant was arrested "based on the actions that supposedly took place that day or the prior day that [defendant] was supposedly involved in." Even if Robinson did not know the details of the crime, Detroit Police officers told him that defendant was a suspect in a crime. The relevant inquiry is whether there was a reasonable suspicion that defendant committed a crime, *Knights*, 534 US at 121, and that testimony satisfies the test.

CONCLUSION

We reverse defendant's felonious assault convictions as there was insufficient evidence for a jury to find that he used a dangerous weapon, affirm defendant's remaining convictions, and remand for resentencing if necessary. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

-7-