# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM JAMES KOOISTRA,

        Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No. 338963
Kalamazoo Circuit Court
LC No. 2016-000634-FH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions and sentences for assault with a dangerous weapon (felonious assault), MCL 750.82; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to two years' imprisonment for the felony-firearm conviction and nine months to four years' imprisonment for the felonious assault conviction. On appeal, defendant claims the evidence was insufficient to convict him of the two offenses, his convictions were against the great weight of the evidence, and the trial court erred when it assessed points to Offense Variable (OV) 1, OV 2, and OV 4. We affirm.

## I. BACKGROUND

The offense occurred on May 6, 2016, during a traffic altercation between defendant and the victims. Defendant became frustrated when one of the victims—the driver of the car—stopped behind him at a traffic light and honked when defendant did not move once the light turned green. After defendant accelerated, he hit his brakes as he went through the intersection. The victim tried to go around defendant in the right lane, but defendant swerved his truck into the victim's lane, forcing her partially off of the road. When the vehicles were side-by-side, defendant pulled out a long-barreled gun, positioned the barrel out the passenger window, and aimed it in the direction of the victim driver and her passenger. According to an eyewitness, a passenger in defendant's truck helped him hold the long barrel out the window. One of the victims took a short video of defendant's truck during the incident, which showed the barrel protruding out of the window. The barrel of the gun did not have an orange tip. When the victim driver saw the gun's barrel, she slowed down and called the police.

-1-

After officers met with the victims and were able to identify defendant, one officer drove to defendant's house and surveilled the premises. The officer saw defendant take something from his truck into his house. Defendant and his passenger then departed in his truck, and they were apprehended shortly after. That night, officers executed a search warrant of defendant's house. Because the house was filled waist-high with trash, officers had to use Tyvek suits and respirators to perform the search, and even then, much of the home was impassable. The officers did not uncover any firearms, but after searching defendant's barn, they found empty shotgun shells and multiple ammunition boxes.

At trial, defense counsel introduced a toy gun and sheath. Defendant testified that the toy gun was what he used to scare the victims that day. An officer with the Kalamazoo Department of Public Safety testified that she watched the short video, and it appeared that the barrel sticking out of the window of defendant's truck was part of a long gun, possibly a shotgun or a rifle. A laboratory specialist, Officer Matthew Bombich, testified that the barrel of the toy gun, which measured only nine inches long, could not have matched the video image. In fact, Bombich recreated the image using the toy gun produced at trial and defendant's truck, and he concluded there was no way that the toy gun was used during the offense. At the close of trial, the jury convicted defendant of felonious assault and felony-firearm.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support the convictions because the prosecution never produced the gun it claimed was used in the offense and also did not prove that the gun was operable. Defendant alternatively argues that the jury's verdict was against the great weight of the evidence for the same reason. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). A challenge to a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998).

The crime of felonious assault involves the following elements: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). An assault "is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Gardner*, 402 Mich 460, 478; 265 NW2d 1 (1978) (quotation marks and citation omitted).

Defendant challenges the second element of felonious assault, claiming he did not have a "dangerous weapon." Dangerous weapons include "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon . . . ." MCL 750.82(1). The dangerous weapon in this case was a gun. A gun is a "firearm," which the penal code defines as "any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive."

MCL 8.3t; see also MCL 750.222(e). Defendant argues that there is insufficient evidence that he possessed a gun within the meaning of MCL 750.82(1) because he had a toy gun, which is not a dangerous weapon. A person in possession of a toy gun cannot be convicted of felony-firearm because it cannot expel a projectile. See MCL 8.3t; MCL 750.222(e); *People v Peals*, 476 Mich 636, 646-652; 720 NW2d 196 (2006); *People v Schofield*, 124 Mich App 134, 135-136; 333 NW2d 607 (1983), rev'd 417 Mich 988 (1983).

In support of his argument, defendant relies on the fact that a real gun was not found during the search of his home and vehicle, and therefore, a gun was not introduced into evidence. However, where the conviction of an offense requires proof beyond a reasonable doubt that a defendant possessed a firearm, this element may be proven without the actual admission into evidence of the weapon. *People v Hayden*, 132 Mich App 273, 296; 348 NW2d 672 (1984). The same reasoning permits a conviction for felonious assault when the prosecutor does not produce a weapon at trial.

In this case, the jury found that defendant possessed a gun. The jury could have based its finding on various evidence introduced at trial, including the witnesses' statements that they thought the gun was real, the victims' response during the offense, Bombich's testimony about the video footage, and the jury's own assessment of the video footage. Viewed in a light most favorable to the prosecution, the evidence would allow a rational trier of fact to conclude that a gun was used in the assault. See *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Therefore, we conclude that the evidence was sufficient to support defendant's convictions.

To establish the elements of felony-firearm, MCL 750.227b, the prosecution must prove: (1) the defendant possessed a firearm, (2) during the commission, or attempted commission, of any felony. See *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Possession is a question of fact for the jury. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011). Possession can be proven by circumstantial evidence and reasonable inferences arising from the evidence. *Id*.

In this case, the evidence was sufficient to support defendant's felony-firearm conviction. A rational jury could have concluded from the evidence presented at trial that defendant was in possession of an actual firearm—not a toy gun. Bombich testified that the toy gun presented at trial was not the gun used in the video. While officers were unable to uncover an actual firearm, there was also evidence that they were unable to conduct a thorough search of defendant's house. That said, officers did uncover shotgun shells and ammunition boxes. Overall, there was sufficient evidence to convict defendant of felony-firearm.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the jury's verdict was against the great weight of the evidence. We disagree.

Trial courts may grant a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *Lemmon*, 456 Mich at 627. "A verdict may be vacated only when it

'does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence.' " *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted).

Defendant frames the issue as a credibility contest. As discussed previously, defendant bases his challenge to his convictions on the assertion that the gun used during the confrontation was a toy gun. Defendant's statements are the only evidence in the record to support the argument that the toy gun offered into evidence was used during the crime. However, the testimony of four other witnesses supports the argument that it was a real gun. The trial court "may not repudiate a jury verdict on the ground that [it] disbelieves the testimony of witnesses for the prevailing party." *Lemmon*, 456 Mich at 636 (quotation marks and citation omitted).

An appellate court will not resolve anew the issue of witness credibility. *Avant*, 235 Mich App at 506. Questions of credibility should be resolved by the trier of fact and should not be revisited on appeal. *Id*. The jury was in the best position to assess defendant's credibility as compared to the other witnesses who testified the gun was real. As such, we defer to the jury's credibility determination, and we find that the jury's decision to convict defendant of felonious assault and felony-firearm was not against the great weight of the evidence.

## IV. LAY WITNESS TESTIMONY

Next, defendant argues that Bombich provided improper lay witness testimony, and therefore, he was denied the effective assistance of counsel when his trial attorney failed to object to Bombich's testimony. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not object to Bombich's testimony; therefore, this issue is unpreserved. We review unpreserved claims of evidentiary error for "plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

Lay opinion testimony is permitted under MRE 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. [MRE 701.]

Opinion testimony from a lay witness will "not involve highly specialized knowledge, and [is] largely based on common sense." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003).

In this case, defendant argues that Bombich testified to subject matter that was outside the scope of lay opinion testimony. Defendant claims that the recreation of video still images to determine whether the toy gun introduced by defendant was the same gun used in the victim's

video required scientific, technical or other specialized knowledge to assist the trier of fact in determining the outcome of the case. This argument fails.

The circumstances of this case are similar to that of *People v Fomby*, 300 Mich App 46, 48-53; 831 NW2d 887 (2013). In that case, we upheld the trial court's decision to allow a police officer to testify under MRE 701 regarding photographic images extracted from a surveillance video. *Id*. at 53. The police officer isolated certain frames from the video, created still images, and gave his opinion as to the individuals' identities in the images. *Id*. at 50-51. In this case, Bombich isolated a frame from the victim's cell phone video, recreated that image using the toy gun produced at trial, and then gave his opinion as to whether the gun barrel in the video could have been the toy gun. This information was rationally based on Bombich's perception, intended to provide a clearer understanding about whether the gun in the video could have been the toy gun, and did not invade the province of the jury. *Id*. at 50-52. Moreover, we held in *Fomby* that the officer "did not identify [the] defendant in the video or still images," and therefore, "did not express an opinion on the defendant's guilt or innocence" and in no way invaded the province of the jury. *Id*. at 53. While we question the proposition in *Fomby* that a witness cannot identify a defendant on a video or still image before the jury,[1] the circumstances here are fundamentally different. Bombich's testimony involved the identification of an object used during the offense, and he in no way expressed an opinion as to the identity of the person alleged to have committed the crime.

Furthermore, recreating a still image was not so difficult a task that it required scientific, technical, or specialized knowledge. Bombich admitted that his recreation had room for error, that he estimated the reference points in the diagram, and admitted that his recreation had differences between the actual video. The purpose of Bombich's testimony was to provide information helpful for the jury to decide a fact at issue. The testimony provided by Bombich was similar to that in *Fomby* and we do not detect error. Even if we did, any improper testimony from Bombich would not have affected the outcome of the proceedings. Testimony from the victims, as well as testimony from another eyewitness, supported the prosecution's theory that defendant used an actual firearm. Moreover, the jury viewed the video and could very well have found that defendant used a real gun rather than the toy gun introduced at trial. Therefore, any admission of Bombich's testimony did not constitute plain error affecting defendant's substantial rights.

As a final point, defendant has not established a claim for ineffective assistance of counsel. Defense counsel's failure to object to the testimony would have been meritless. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Thus, defendant's argument fails.

---

[1] In *Fomby*, this Court relied on nonbinding precedent from the First and Ninth Circuit Court of Appeals. *Fomby*, 300 Mich App at 52-53.

## V. SENTENCING

### A. OV 1 AND OV 2

Defendant next argues that the trial court erred in assessing 15 points to OV 1 and 5 points to OV 2 at sentencing. The trial court assessed 15 points to OV 1, which is the proper score where the defendant pointed a firearm at or toward a victim. See MCL 777.31(1)(c). The trial court assessed five points to OV 2, which is the proper score where the defendant possessed or used a firearm. See MCL 777.32(1)(d); see also MCL 777.32(3)(c). Defendant argues that OV 1 and OV 2 should have been assessed zero points because they only apply to an actual firearm and defendant was using a toy gun. We disagree.

For preserved sentencing errors, "the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

A trial court's factual findings for purposes of sentencing are not subject to the same standard required for a conviction. Factual support for a sentencing guidelines scoring decision need only be established by a preponderance of the evidence. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). In this case, finding that defendant in fact had a firearm was crucial to the jury's felony-firearm conviction. Given that the felony-firearm conviction was determined based on the more stringent standard of beyond a reasonable doubt, there is sufficient factual support for the same determination for OV 1 and OV 2.

### B. OV 4

Finally, defendant argues that there was insufficient evidence to find that the victims in this case suffered serious psychological injury requiring treatment. Defendant argues that the only support for scoring OV 4 as such was the prosecutor's statement that the two victims were extremely upset about the matter and an e-mail from the victim driver to the prosecutor that was not a part of the record. We disagree.

OV 4 applies to "psychological injury to a victim." MCL 777.34(1). Specifically, points must be assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In assessing OV 4, the fact that the victim did not seek professional treatment is not conclusive, and an assessment of 10 points is appropriate when there is "some evidence of psychological injury on the record to justify a 10-point score." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). In determining the sentencing guidelines, courts may consider the entire record, including the presentence investigation report, a defendant's admission at the plea examination or trial, and evidence introduced during a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). Courts may also look to the victim's impact statement and

testimony at sentencing. *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012); aff'd 495 Mich 33 (2014).

The Michigan Supreme Court held that a victim's feeling of fear during a crime, without other showing of psychological harm, is insufficient by itself to assess 10 points for OV 4. *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017). The Michigan Supreme Court also held that "a court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime." *Id*. at 165. The Court stated that although victims are often, and understandably, frightened during a crime, this fear does not necessarily lead to serious psychological injury. *Id*. at 164-165. However, the trial court may assess 10 points for OV 4 when the injury caused by the crime continues after the completion of the crime itself. See *People v Wellman*, 320 Mich App 603, 611-612; 910 NW2d 304 (2017). We have upheld the assessment of 10 points for OV 4 when a victim impact statement disclosed feelings of anger, hurt, violation, and fear after the crime. *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). We have also upheld the assessment of 10 points for OV 4 when the victim indicated that he suffered from depression and changes in personality after the crime. *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010).

The evidence presented relating to the victims' psychological injury was a sufficient showing of psychological harm to assess 10 points for OV 4. One of the victims wrote an e-mail to the prosecutor, in which she specified that she needed and wanted counseling, but could not afford it. Defendant argues that the trial court wrongly relied on statements by the prosecutor regarding the victim's need for counseling that were not part of the record. However, the prosecutor included this e-mail as an attachment to the sentencing memorandum, and it became a part of the record.

The victim driver also submitted a victim impact statement, in which she claimed she was now "very scared to drive." As in *Wellman*, she changed her behavior since the incident. Instead of driving herself, she was relying on others to drive her to work. She was wary of people around her, and she felt uncomfortable with old white men, trucks, and speeding cars. The trial court specified that the victim impact statement was a significant factor in its decision to assess 10 points to OV 4. The victim driver also said at trial that the entire incident was "devastating" to her. The other victim testified she is "still scared today" from the incident. These statements were sufficient to find psychological injury requiring treatment by a preponderance of the evidence.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica